Good morning, Your Honors. Gerard Engelskirchen, appearing for the appellant David Van Alstine in this case. I'd like to reserve three minutes for rebuttal. What I intend to talk about this morning is the issue relating to the standard of review to be applied in this case based simply on the documents that were applicable in this case. I'll do my best to answer any questions you may have about other issues, but that's all I plan to actually address. I first encountered a long-term disability insurance case about ten years ago that involved ERISA preemption. And, of course, I soon discovered that ERISA cases are substantially different from other insurance cases. And I was absolutely amazed to find out that there was an abuse of discretion standard of review that applied in many cases where an insurance company had made the decision about whether to deny benefits or terminate benefits. The notion that the courts would defer to an insurance company's decision not to pay a claim just seemed very strange. I couldn't believe that Congress actually intended that. Nonetheless, that's the way the law has evolved. I believe the law has evolved that way based on a fiction. And I believe that fiction is that in ERISA cases, whoever the plan administrator is or the claims administrator is, that that person acting in a fiduciary capacity will make a fair and unbiased decision. Counsel, to the extent that you're asking that the law in this area be changed, how can a three-judge panel of this court make any headway in your behalf? We're bound by every previous decision of our court and the Supreme Court as well, obviously. That certainly is the sad truth, Your Honor. And I'm not asking this court to change the law. But what I'm concerned about is whether this fiction, which forms the basis for much of the law in this area, is going to be extended today. If you look at Article 3.1.2 of the master plan document, it clearly says that the administrator supervises the plan and that there are ‑‑ it expressly uses the phrase discretionary authority in the administration of the plan. And isn't that pretty much all that our previous cases require, is that kind of authority with discretion? Yes and no, I think is the not entirely clear answer, Your Honor. Yes, in the sense that if all we had in this case was that master plan document, I would not be standing here before you arguing that a de novo standard of review was indicated by the documents in this case. But what we have is a document. The master plan document is not the only document which comprises the plan in this case. By its terms, it refers to the summary plan description, which defers to the insurance policy in this case. And so we really have four documents. The master plan document, the summary plan description, the insurance policy, and the certificate of insurance. And the net result of all of these documents is that there is only one document which controls the rights of the claimant and the obligations of the insurance company, who is the effective plan administrator in this case. And that is the insurance policy. All the other documents effectively defer to that document and they all basically say that when there is insurance coverage applicable to the disability insurance, to the claim that is involved, all of the decisions will be made strictly according to the terms of what is in the insurance policy and all of the decisions will be made by the carrier. The plan as such retained for itself absolutely no discretion to do anything, no power to do anything. It simply said, we've got insurance to cover this. Whatever the insurance company does, that's it. Look to them, look to the policy, and that's it. Therefore, the effective plan document in this case is the insurance policy. And that's what determines the rights of everybody involved. And so, and it's undisputed that that document does not reserve any discretion within the meaning of the Firestone case so that it does, there's no basis for adopting an abuse of discretion standard of review based upon what's contained in the insurance policy itself. And so what I'm basically asking the court to do in this case, as I say, is to recognize the reality of this case, which is that the insurance policy is the only effective document, and not to extend the fiction that has informed many ERISA cases any further than it needs to go. And therefore, based on that, I would ask the court to find that this case should have been reviewed de novo, that that is the applicable standard. I don't believe there is another Ninth Circuit case which is in this case. So the closest case is the Madden case, which is discussed in the briefs, and it is different because in Madden, the relevant documents did reserve to the employer or to the plan an oversight function, reserved the right to interpret the policy. And so it's clearly a different kind of a situation. Here, there was absolute abdication by the plan to the insurance policy and the insurance carrier. If the court has no other questions, that's the extent of the remarks I plan to make this morning. I do have one. Assuming that we were to agree with you for the sake of argument, why wouldn't on de novo review we still reach the same result in view of the fact that there were medical records and other investigative materials that suggest that your client is not disabled from any occupation? The conclusion that was contained in the court's question is one that I would respectfully disagree with. I don't, I mean, I think perhaps if we make an analogy to the criminal area and talk about reasonable suspicion as compared to probable cause, perhaps some of the circumstances would give rise to some reasonable suspicion, a hunch, perhaps. But in terms of an adequate basis to determine that this man was not disabled, I don't think there's anything in those medical records that would justify that conclusion. To reach that conclusion, given the state of this record, I think was arbitrary and capricious. The only medical opinion that said that he was able to work, that he was not disabled, was in 1994 by Dr. Johnson. And in that opinion, Dr. Johnson was specifically given the assignment to make an evaluation and to render an opinion based upon objective findings. And he was limited to what he could determine by objective findings. Mr. Van Alstyne's disability is primarily manifested by pain. The objective, there are not adequate objective findings or there are not objective findings that demonstrate exactly what his injury is, the precise physiological nature of his injury. But the fact is he had a long, long history of pain and that was well documented. He worked for eight years after the initial injury, although he was experiencing pain. He was not a malingerer. Following Dr. Johnson's opinion in 1994, there were two neuropsychologists, independent neuropsychologists, neither of these was retained by the plaintiff, the appellant. Both of them reached the same conclusion that this man's complaints of pain were legitimate, that he was not a malingerer, that there was not any sort of psychological component to his complaints of pain. That put to rest any questions that Dr. Johnson's report might have raised. And based on that, the insurance company, to its credit, continued paying benefits for another two, two and a half years. And it was then when they seized upon a completely uninformative, if you will, functional capacity form that they put out, they seized upon some language in that in order to justify terminating benefits. And they also relied on a labor market survey and a transferable skills analysis. And I've pointed out in the briefs serious problems with those. Where does it say in the summary plan and the policy, what does it specifically say as to the authority of the trustee or the person to administer the plan? That's different than the plan itself. In the summary plan description? Right. Or the policy. You say the policy really is what we should be looking at. Where do we look? What's it say? Well, in the policy, what we're looking for is to find something that says that discretion is reserved to the, in this case, the insurance company, in ERISA terms, in terms of making a decision. So it doesn't say any one way or the other. Is that what you're saying? Well, the standard, that's correct. It doesn't convey that discretion. And under the cases, of course, it has to be specifically reserved. But what the policy does... It's reserved in the plan itself. And there's nothing in the policy itself. So what's to tell us that the policy, by silence somehow, revokes what it says in the plan? Well, the policy itself contains an integration clause, which says all your rights are contained within this policy. The policy sets up an objective standard for determining whether a person is entitled to benefit. But what's it say about discretion? It does not convey. Any discretion does not reserve any discretion. Again, you're saying silence in the policy somehow revokes or changes what it says in the plan itself, that discretion controls, right? I'm not saying that it changes what's in the plan. I'm saying that the plan doesn't apply. I'm saying this is like the Kearney case, where the policy set up an objective standard. And all that was at issue in the Kearney case was the policy. And I'm saying that's basically all that's at issue in this case is whatever... But in Kearney, isn't it true that it was very ambiguous as to whether there was discretion or not? Here, it's not ambiguous at all. In the policy? Isn't that true? Yeah. I would agree with that. I think here it's clear that there was no discretion in the policy. And in Kearney... No. No, in the plan. There's no... There's absolute discretion in the plan, right? Yes. All right. I agree. In Kearney, it was not... It was ambiguous, right? Let me back up just a minute, Your Honor. The court is using the word plan, and I'd like to be more precise, if I may, in my response. The master plan document, I concede, contained discretion. I believe that the plan consists of the insurance policy. The master plan document is a relevant document, but because it completely abdicates any power or authority and reserves nothing for the plan itself to do, the actual effective document is the insurance policy in this case. But it's clearly part of the ERISA plan. Thank you. So I would ask that the court, based on the evidence, which I think is overwhelming that this person was disabled, ask that the court reverse the judgment below. Thank you. Good morning. May it please the court, my name is Carolyn Knox. I represent the Lockheed Martin Welfare Benefit Plans, specifically this morning the Long-Term Disability Plan and the Claims Administrator Life Insurance Company of North America, who I will refer to as LINA. Since Mr. Engelskirchen is limiting his remarks today to requesting the court essentially abandon the standard that had been set multiple times by the Ninth Circuit on which plan documents apply and how to determine the standard of review, unless the court would like to go elsewhere, I will try to limit my comments to the same issues. Before I start addressing the issues raised by Mr. Engelskirchen, does the court have any specific questions for me? Well, I'll ask you the same question. What difference would it make as a practical matter in this case if we used a different standard of review? I agree with Your Honor in that the same result It's a question. I don't know how you can agree or disagree. Your Honor, I do believe that under either the de novo standard of review or the abuse of discretion standard that the result on the merits would be the same. This is an administrative record that is heavy with evidence supporting the Claims Administrator's decision. Judge Ware had no difficulty coming to that conclusion as well at the district court level. There are multiple documents wherein Mr. Van Alstyne's treating physician, Dr. Lichtenstein, opined that Mr. Van Alstyne was a class three or class four under the dictionary of occupational title definitions, meaning that he could in fact perform a light duty or sedentary occupation, including as early as 1992. In 1992, however, the definition of disability was a disability from his own occupation at Lockheed Martin, and at that point in time, his occupation required some additional physical capabilities. But Dr. Lichtenstein was consistent in his position that he could find no objective reason for Mr. Van Alstyne's treatment. And when did that period end? You said the initial period was a different standard? Yes, the initial period, which was a 24-month called the own occupation standard, that ended in March of 1994. And then when did you terminate benefits? In November of 1997. Well, why did he pay for three years if his condition didn't ever change, if it was consistent all the time? What caused the termination after three years of payment? There were a couple of considerations. Number one, although Dr. Lichtenstein continued to indicate that Mr. Van Alstyne could at least perform a sedentary occupation, there were some MRI reports that came in that showed some abnormalities. But in response to, and the claim continued, in response, though, to Dr. Lichtenstein's observation that perhaps Mr. Van Alstyne's condition was actually psychological in nature, there were the two neuropsych evaluations, and the Those didn't cause you to terminate. No, they did not. Those supported Mr. Van Alstyne. They did. I'm trying to understand what it is if you say Dr. Lichtenstein told you the same thing all along, why there was first the initial two years you explained, and then there was another three years of benefits, and then suddenly you decided not to pay anymore. There was a practical consideration that is not briefed, in that Lina made some decisions to close claim offices, and Mr. Van Alstyne's claim file, along with many others, moved from the Walnut Creek claim office. It was reopened in Los Angeles. People gathered information, but before a decision could be made to terminate, it then transferred to Dallas, Texas, and was re-evaluated there. At the point that the Dallas, Texas, claim office started reviewing the file, they started to evaluate the information appropriately and move towards termination. But did it You got a decent evaluation that gave them benefits in Los Angeles, and then it was moved to the Texans. No, actually, that claim office closed, so everything moved. And, in fact, the decent evaluation came in while the claim was in the Dallas claim office, and it continued. The benefits continued. So Mr. Van Alstyne actually benefited from some office closures and continued to receive benefits for a few more years. But the quantum of the evidence does support the termination of his benefits in November of 1997. When were the surveillance pictures taken? The surveillance was conducted in January and February of 1998 during the appeal period. This was after the termination in November 1997 and just prior to the upholding of the termination on appeal, which was in March of 1998. Let me address for a moment Mr. Van Alstyne's comments about what constitutes a planned document here. Lockheed Martin is an extremely large defense contractor. At one time there were over 40,000 Lockheed Martin employees covered under all of these plans. Lockheed Martin has a large department of benefits professionals and benefits lawyers who administer these plans. It is not a situation where, as in Kearney v. Standard Insurance, you had a small law firm in Sacramento, California. They sought a policy of insurance and distributed to the employees covered by the plan at the law firm a summary plan description prepared by the insurance company, in that case Standard Insurance. Here we have a large department of individuals whose job it is to prepare planned documents. They prepare the master plan document. They also prepare the summaries and material modifications, et cetera, to all the filings with the Department of Labor. The master plan document specifically does confer discretionary authority and other rights, powers, and responsibilities to the plan administrator. Contrary to Mr. Engelskirchen's comments, there is no abdication of power or discretion by the plan administrator to line up in this particular case. The plan administrator always has the right to modify, terminate, or amend the plan at any time. The U.S. Supreme Court in Curtis Wright v. Shonin Jungin, I believe that is the correct pronunciation, has unequivocally affirmed that concept. The plan administrator also at any time can decide, number one, they want to create instead of a fully insured long-term disability plan, they can in fact create a self-funded long-term disability plan. In that case, there would be no policy of insurance in place. They could also change the plan to be a partially self-funded plan. In that case, they would probably pay the benefit out of a trust up to a certain level and maybe get an excess loss policy from an insurance company. But a bare bones insurance policy, particularly in this case, is not an essential planned document. And also if you refer to the master plan document, Article 1.1, which is the introduction to the master plan document, it does specifically state this document, meaning the master plan document, and the applicable terms and conditions identified in Appendix A constitute the official plan document for each plan. Appendix A lists the summary plan descriptions prepared by the Lockheed Martin Benefits Group, including the summary plan description here at issue. Those summary plan descriptions are distributed to the participants and they explain to the participants the terms and conditions for participation in the plan. To determine, as Mr. Engelskirchen asked the court, that a bare bones insurance policy is the only relevant document or planned document in this case, is absurd. The plan administrator reached out and contracted with an insurance company for money to fund the benefit available under the plan. They negotiated that contract. The plan administrator and Lina negotiated, negotiated what the definition of disability would be and the conditions that payments would be made. And those terms and conditions are reflected in the Lockheed Martin summary plan description that is provided to individuals. The summary plan description notifies the participants that there are no further or other benefits available under the plan because those benefit payments are governed by the policy. But in no way does it abdicate control over the plan. In no way does it state that it exercises the discretion. In this case, with this plan, the plan administrator, as stated in the master plan document, exercised its ability to delegate its powers and authorities to the claims administrator. And in the summary plan description, it states that the insurance company, yes, okay, so the discretion in the plan is given to the administrator and he delegates it to the insurance company. Yes. And it is expressed. Does the plan provide for such delegation? Excuse me? Does the plan provide for delegation of discretion? Yes, it does, Your Honor. Both the statute section 405 under the Act or 1105 under the statute provides that a plan administrator can delegate their duties and responsibilities to another and then specifically in the master plan document section 3.1.2 subsection E, which states to allocate or discusses the plan administrator's duties and responsibilities and powers and their discretionary authority. And it states specifically that they have the power to allocate and delegate its responsibilities or power under the plan and to designate other responsibilities under the plan, any such allocation, delegation or designation to be in writing. And in this case, that writing is the summary plan description notifying participants that it is the insurance company, it's the claims administrator that will be making the decisions on their claim. Thank you. All right. Is that it? That is, let me just look quickly. Mr. Engelskirchen, excuse me, raised the issue of the integration clause. That is merely controlling of contract issues. It has no relevance here with regard to designation of discretionary authority. And then lastly, addressing Mr. Engelskirchen's response to Judge Graber regarding the evidence, Mr. Engelskirchen argued that the complaints of pain could not be substantiated by objective evidence. It was unfair of the claims administrator to require that objective evidence be submitted. But there are, from my count yesterday, at least six cases that address this issue in, within the Ninth Circuit, Voight v. Metropolitan Life Insurance Company out of the Central District of California, and Martin v. Continental Casualty Company out of the Northern District, as well as others from the district courts of New York, Virginia, and Pennsylvania. They all address the issue of whether or not a plan administrator can or claims administrator can require objective evidence where the diagnosis or the complaint of disability is not susceptible to objective evidence. Generally this issue arises in fibromyalgia cases. It's a disputed diagnosis. It's very hard to pinpoint what the diagnosis is and what the symptoms are. But in each of these cases the courts have held that the requirement that objective evidence be submitted is not an abuse of discretion. In fact, from a practical standpoint, is required to determine whether or not someone is actually disabled under the terms of the plan. Am I correct that you concede that because of the insurer's dual role as both the funding source and administrator, that raises an inherent conflict of interest? Well, it's... You concede that or not? Under Atwood v. Newmont Gold and the other Ninth Circuit cases, yes, because Lina issued the policy of insurance, which is the benefit that is ultimately paid. But that is not the end of that test. Then what does that do to the discretion? If there is a conflict of interest, then you still have the same discretionary authority. You do. An inherent conflict in and of itself does not change the standard of review. Well, who has the burden to show that it doesn't? You? No, actually the burden... What's an inherent conflict is shown again. I'm citing... Well, as I understand it, you have to show it has some effect on the decision-making process. And your opponent has pointed out, I think, 16 places in his brief where this was not handled in, according to him, in a regular manner. And therefore, the conflict that Judge Rhoades points out requires that you use not abuse of discretion, but de novo review. Your Honor is correct. However, the burden initially shifts to the plaintiff to demonstrate through actual probative evidence that a conflict of interest, a conflict of interest, an actual conflict of interest, tainted the claim decision. The burden then shifts... Actual conflict of interest. Okay. So we're down to the second point. Whether there's evidence that shows that instead of making a fully objective determination of the way the company handled this claim shows that the conflict had an effect on its processing of the claim. And as I said, counsel gives 16 illustrations of manners in which he believes that the claim was not handled in a type of manner that would ordinarily claims would be handled by an objective party. And we've had cases where, you know, if you disregard evidence or if there's any change in procedures, that that's enough to make the conflict cause a change in the standard of review. So he gave these, those illustrations which are either correct or not. In addressing that point, Mr. Van Alstyne did raise several points and allege that the points he raised constituted evidence of a conflict of interest. But it is our position... The effect of the conflict. And there are two effects, actually, if there is a conflict of interest, either a heightened arbitrary and capricious review where you give a little bit less deference to the claims administrator's decision or you slide all the way down to de novo. But neither the district court below Judge Ware nor the claims administrator arrived at the same conclusion. In fact, Judge Ware specifically addressed some of the issues raised and found that those were not conflicts. He was not changing the standard of review. But the position we take here is that, A, no conflict existed, but certainly no conflict tainted the decision. All of the information that was presented as evidence of a conflict of interest was really evidence that Mr. Van Alstyne, that displeased Mr. Van Alstyne. Any participant whose claim is denied or terminated is going to take the position that the claims administrator was wrong and that their decision must have arisen from some nefarious underpinning. When the court has found an actual conflict of interest, they're not looking at decisions and weight within the administrative record generally. They're looking at issues such as when there are inconsistent reasons given for the termination, which we do not have here. In Kearney, the claims administrator told Mr. Kearney that there was no appeal process for a determination of his benefits because his benefits had only been suspended. Although the court didn't discuss the conflict of interest there, that would be a classic conflict of interest that would taint the decision. In the Friedenreich v. Intel case, the administrator's compensation, the individual who was reviewing the claim, her compensation was based on how much money she saved the corporation by not paying claims. That is a direct conflict of interest. Here, we do not have evidence of any of it. This was a straightforward claim for benefits. It was adjudicated, as any other claim was adjudicated, a substantial number of independent medical examinations. Did somebody want to suggest to him that he change the basis of his claim to a psychiatric claim? That did occur in 1995. The reason that he was given that opportunity was his own treating physician. That would have cut his benefits off after two years. Well, he might have had the choice of cutting his benefits off right then because his treating physician was consistently saying, I can't find any basis for his complaints versus giving him an opportunity. We have an excess pain rule in social security cases, at least in this circuit, where there was certainly something that happened to him. The question is, is there any explanation for the excess pain? There's nothing particularly unusual about a case where there's excess pain. But as I understand the administrator's view, you have to have an objective basis for the excess pain. I think that's going a bit beyond where the claims administrator was going because what they were doing was merely evaluating the information and consulting with the in-house medical director. The information received from Dr. Lichtenstein. Dr. Lichtenstein himself was saying, this is certainly the most unusual case I have ever seen. This man twists, bends, has incredible range of motion, no atrophy, squats and lifts with ease. I can't even do that. The physician himself then said all he can do is do some work in his home. He did that in a narrative, but in every single form he was trying to tell us this man can return to a sedentary occupation. It sounded like from his conversations and letters to the company that that was not what he was trying to tell you. He was trying to tell you that the person couldn't work. Well, Dr. Lohan, excuse me, Dr. Maybe the forms did carry that message, but it certainly doesn't seem to be the message he was trying to convey. Well, Dr. Lichtenstein only after the termination in November 97 started to say, oh no, what I'm trying to tell you is he can't work. But that information was contradicted by his conversations with the in-house medical director, Dr. Kuo, wherein Dr. Lichtenstein said, again, this is a stranger's case, I cannot explain his pain, and I recommend that you surveil my patient, although I generally don't recommend that. He's asking Lina to conduct surveillance on his own patient because he's not convinced. When he called the claims administrator at one point after the termination, Mr. Van Alstyne was standing in his examination room during the telephone call. He was in an unenviable position between his patient and the claims administrator. His patient is saying this is wrong, you can't let this happen, you must support me, yet in private conversations with the claims administrator, he did not support his patient's claim. Further, the Eastern District of Pennsylvania in 2002, and I have a copy of this decision with me because there's only Alexa's side, it's Cell v. Unum Life Insurance Company, the court there stated that significant or controlling significance should not be given to a doctor's change of opinion after termination of disability benefits because the change in opinion comes only after the benefits have been terminated, that it is directly contradicted generally by the doctor's earlier opinions and is unsupported by the medical evidence. This is squarely on point with the case before the court today. Dr. Lichtenstein consistently opined this individual could return to at least a sedentary occupation and only changed his opinion after the termination of benefits. Thank you. Thank you. Would the court like a copy of Cell v. Unum that I just cited to? No, thank you. You would like a copy? No, thank you. Thank you. There are just three points that I would like to reply to. The first point is that counsel indicated that under the law, the plan could have modified its terms at any time and therefore that somehow meant that the plan retained discretion even in view of its complete deference to the insurance contract and the insurance company. The fact is if that's all that it So certainly that's not enough to retain discretion in every case. In other words, there simply could never be a case where there was a Danova review. The second point I'd like to make is counsel indicated or stated that the plan delegated its discretionary authority to LINA. And the fact is there is no language, no document, no statement anywhere that says we are delegating our discretionary powers or our discretionary authority to the insurance company. All that the plan documents say, the summary plan description and the master plan document, is that if there is insurance, all the rights will be determined by the insurance company and the insurance policy. And the final point I'd like to make is it's a bit difficult to reply to cases that are cited for the first time this morning, but in particular in connection with the cases that counsel refers to as approving of imposing a requirement of objective evidence in support of a claim for disability, in recent years we have seen policies that have contained that expressed written requirement in the policy. And I haven't seen the cases that counsel refers to, but my guess would be, my speculation would be that that's the type of case where this language about approving a requirement of objective evidence is contained. We certainly don't have anything like that in this case. And the court has no further questions. Thank you, counsel. The case, it's argued, will be submitted. The court will take a brief recess.
judges: Reinhardt, Graber, Rhoades